IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| BERNARD E. GREER, | ) Civil Action No.  3:10-1390-MBS-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| UNIVERSITY OF SOUTH CAROLINA, | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |

Plaintiff, Bernard E. Greer ("Greer") filed this action on May 27, 2010.  He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act of 1967, as amended, 26 U.S.C. § 621 et seq. ("ADEA"); and the Equal Pay Act, 29 U.S.C. § 206(d) et seq. ("EPA").[1]  Defendant, the University of South Carolina (the "University"), filed a motion to dismiss and a motion for summary judgment on August 5, 2011.  Greer filed a response on September 21, 2011, and the University filed a reply on October 10, 2011.

## **FACTS**

1.    Greer, a sixty-two-year-old male, is an associate professor at the University.  He teaches creative writing in the University's English Department.  See Plaintiff's Deposition ("P. Dep.") Dep. 57, 72, Defendant's Exhibit ("D. Ex.") 19.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Local Civil Rule 73.02(B)(2)(g) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

2.    In 1971, Greer earned a BA in English from the University.  He earned a Master in Arts in creative writing from Hollins College in 1973.  P. Dep., D. Ex. 12.

3.    In 1975 (prior to his employment with the University), Atheneum Publishers, a nationally-known and respected publishing house in New York, published Greer's novel titled <u>Slammer</u>. The novel was positively reviewed and Greer received the best reviews of any book he published in his career.  P. Dep. 14-16.

4.    In 1978, New York-based MacMillan Publishers, an internationally-known publishing house, published Greer's book titled <u>Halloween</u>.  Greer states that <u>Halloween</u> received very good reviews, but not as many as <u>Slammer</u> and not as many in national venues.  P. Dep. 14, 17-18.

5.    The University hired Greer in 1981 as an assistant professor in the English Department.  <u>See</u> P. Dep. 72, D. Ex. 19.

6.    Greer's book <u>Time Loves a Hero</u>, was published in 1986 by Doubleday, a New York publishing house which is well respected and nationally known.  The novel received mixed reviews (which included national reviews) and the reviews were not as positive as for Greer's previous two books.  P. Dep. 14, 18-20.

7.    Greer was promoted to the rank of associate professor and awarded tenure in 1987.  P. Dep. 73; D. Ex. 20; <u>See</u> William Rivers Aff., Attachment A.

8.    In 1988, Doubleday published Greer's book titled <u>The Loss of Heaven</u>.  Greer stated that the novel received fewer reviews than his earlier novels, it received mixed reviews, and the reviews were from smaller venues (not national reviews).  P. Dep. 20-21.

9.    Greer was appointed Director of the English Department's Master of Fine Arts ("MFA") Program in 1994.  He resigned that position in November 1995, but remained in the English

Deparment.  He claims that the former English Department Chair, Dr. Robert Newman ("Newman"), harassed and humiliated him such that he was forced to resign.  P. Dep. 75, 84.

10.    In 1995, Greer oversaw a project and authored some of a non-fiction work titled <u>The Campbell Years</u>, which was printed but not by a publisher.  The same year, Greer wrote another non-fiction work centered around South Carolina politics titled <u>Presumed Innocent</u>.  P. Dep. 14, 21-23, 35.

11.    In 2001, Greer applied for promotion to full professor, but the English Department (by a vote of nine in favor and twelve opposed) denied his application.  Greer, who was dealing with serious health issues at the time as well as what he categorized as his humiliation in being denied a promotion, did not pursue any legal challenge.   P. Dep. 107-109, 112; D. Ex. 28, p. DEF-00606.

12.    Greer also claims that his selection committee, headed by an associate professor violated the faculty manual.  He asserts that the Chair of the English Department at the time begged him not to protest and made him a deal by reducing his teaching load and his committee work as well as giving him a $6,000 raise. <u>See</u> P. Dep. 120, 124, E. Ex. 33.

13.    A book titled <u>Murder in the Holy City</u>, Greer's first novel in approximately eighteen years, was published in 2006 by Texas Review Press (a small press).  The work had few sales, very few reviews, and no national reviews.  P. Dep. 14, 27-30.

14.    Greer's full length play, <u>Little Tin Gods</u>, was produced by the Arts Institute of the University in 2008, but was not published.  P. Dep. 15.

15.  <u>Late Disorder</u>, a book of Greer's poetry, was published in 2007 by Bay Oak Publishers.  Greer stated that it is not a well known publisher and he has not received any royalties from the book..  P. Dep. 14, 32-33.

16.  On September 9, 2009, Greer filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") against the University.  P. Dep. 60-61; D. Ex. 13. In his charge he alleged:

> (a) Through August 11, 2009, I have been denied equal wages. (b) Through August 11, 2009, I have been subjected to harassment and intimidation....I contend younger male and female similarly-situated employees are paid more than me. I have been teaching longer than some of the younger female employees who are paid more than me....I contend that I am being subjected to harassment and intimidation in that my supervisor on a consistent basis has made comments relative to me being out of work because of my disability. When I am out of work, I take sick time as required.  My supervisor is aware of my disability....I therefore believe that I have been discriminated against because of my sex (male), my age 60... and my disability in violation of the South Carolina Human Affairs Law, as amended, Title VII of the United States Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967, and The Americans with Disabilities Act of 1990, as amended."

P. Dep.,  D. Ex. 13.

17.  SCHAC issued a "no cause" determination on March 8, 2010.  P. Dep. 62; D. Ex. 15.

18.  On November 10, 2009, Mary Anne Fitzpatrick ("Fitzpatrick"), Dean of the College of Arts and Sciences, stated that she was in receipt of Greer's November 9, 2009 note regarding his interest in the Directorship of the MFA Program within the English Department.  She informed him that such appointments are made by the Department Chair and directed him to discuss the issue with Professor William Rivers ("Rivers").  P. Dep., D. Ex. 46.  On January 15, 2010, Greer wrote a note to Rivers in which he stated that he hoped Rivers would "appointment [sic] me head of the MFA."  P. Dep. 201, D. Ex. 47.

4

19.    Rivers appointed Elise Blackwell ("Blackwell") to the Director of MFA Program position in the English Department in March 2010.  Rivers Aff., Para. 13.

## STANDARD MOTION TO DISMISS

Under Fed.R.Civ.P. 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction.  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  In determining whether it has jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Id.  The motion to dismiss should be granted only if the "material jurisdictional facts are not in dispute" and the "moving party is entitled to prevail as a matter of law."  Id.

## STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  Anderson, 477 U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then

5

shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."
Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

"[O]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c) (1)(A-B).

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1-4).

## DISCUSSION

Greer alleges disparate pay claims under the ADEA, Title VII, and the EPA. He also appears to allege claims for hostile environment and a claim for failure to promote under Title VII and the

6

ADEA. Additionally, he now appears to allege a claim for retaliation pursuant to Title VII and the ADEA. The University contends that Greer's ADEA claim should be dismissed because it is barred by Eleventh Amendment immunity. The University contends that its motion for summary judgment should be granted because: (1) Greer has presented no evidence of discriminatory animus as to his disparate pay claims under the ADEA, Title VII, or the EPA; (2) Greer has presented no evidence of age or gender disparate treatment under Title VII, the EPA, or the ADEA; (3) the University has presented legitimate, non-discriminatory reasons (under Title VII and the ADEA) and factors other than sex (under the EPA) for its pay decisions; (4) Greer has not exhausted a hostile environment claim based on his age or gender and he has not offered any evidence that any alleged harassment was based on his age or gender; (5) Greer's denial of promotion claim has not been administratively exhausted, is time-barred, and is substantively meritless; (6) Greer's retaliation claim (denial of MFA Directorship position) has not been administratively exhausted, there is no evidence of a discriminatory or retaliatory animus, Greer has no evidence that the filing of his lawsuit caused the non-appointment, and the selection decision was made prior to the filing of this action; and (7) Greer has not alleged any claim for breach of contract, any such claims are barred by the applicable three-year statute of limitations, and any such claim is barred by Eleventh Amendment immunity.[2]

A.    <u>Pay Claims</u>

Greer appears to allege that he was paid less than similarly-situated University employees based on his age and/or gender in violation of the ADEA, Title VII, and the EPA.

---

[2]Greer does not appear to allege any breach of contract claims in his Complaint. Further, he has not discussed any such claim in his memorandum in opposition to the University's motion for summary judgment.

7

(1)        Pay Claims under the ADEA

Greer alleges that he was paid less than similarly-situated younger employees in violation of the ADEA.   The University contends that any claims under the ADEA (including pay claims) should be dismissed because the University is protected by Eleventh Amendment immunity and the ADEA does not abrogate the State's Eleventh Amendment immunity as to suits by private individuals.

The University is an arm of the State of South Carolina.[3]  See Maryland Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255 (4th Cir. 2005) ("Numerous courts have decided whether public state universities are 'arms of the state.' Almost universally, the answer has been in the affirmative."); Martin v. Clemson University, C/A No. 8:08-354-GRA, 2009 WL 2782182 (D.S.C. Aug.28, 2009) (unpublished)(holding that Clemson University was an arm of the state entitled to Eleventh Amendment immunity); Johnson v. South Carolina State Univ., C/A No. 5:09-1421-MBS, 2009 WL 1834488 (D.S.C. June 24, 2009)(unpublished)(holding that South Carolina State University was entitled to Eleventh Amendment immunity); S.C.Code Ann. § 59-101-10 (legislatively creating the University of South Carolina and other State colleges and universities); S.C.Code Ann. § 59-107-10

---

[3]Moreover, the University satisfies the test announced in Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n, 822 F.2d 456 (4th Cir.1987), to determine whether a governmental entity is an "arm of the state" under the Eleventh Amendment. The factors of the test include, but are not limited to, the following: (1) whether the state treasury will be responsible for paying any judgment that might be awarded; (2) whether the entity exercises a significant degree of autonomy from the state; (3) whether it is involved with local versus statewide concerns; and (3) how it is treated as a matter of state law. Id. at 457-58.  Here the University has asserted, and Greer has not contradicted, that the State treasury will be called upon to pay a judgment if Greer prevails, the University does not exercise a significant degree of autonomy from the State (as the University Board members include the Governor or designee, a member appointed by the Governor, the State Superintendent of Education, and sixteen members elected by the South Carolina General Assembly), the University is involved in statewide concerns (higher education), and the University is regarded as a state agency by state statutes.

(including the University of South Carolina in the definition of "state institution"). Accordingly, the University is immune from suit in federal court unless it waives its immunity or Congress abrogates its immunity. See Lapides v. Board of Regents, 535 U.S. 613 (2002) (noting that a State may waive sovereign immunity); Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993)(stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted).

Greer has not shown that the University waived its immunity or that it was abrogated by Congress. Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity in enacting the ADEA. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000). In his memorandum in opposition to summary judgment, Greer does not appear to dispute that the University is entitled to Eleventh Amendment immunity as to Greer's claims for monetary damages, but argues, pursuant to Ex Parte Young, 209 U.S. 123 (1908), that he is entitled to prospective injunctive relief in addition to the ancillary remedy of attorney's fees. The University argues that any claim under Ex Parte Young is barred because Greer has sued only the University and not a state officer, and because Greer is attempting to remedy past alleged legal violations, not potential violations.

Private individuals are not precluded from suing state officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. See Ex parte Young, 209 U.S. 123, 157 (1908). Here, however, Greer has sued the University, not a state official in his or her official capacity. Even if the Ex Parte Young exception is triggered, the Fourth Circuit has stated that the language of the ADEA limits liability to "employers" and therefore prohibits individual liability

9

against employees as agents of the employer. Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.1994).

Even if Greer could show that the University is not entitled to Eleventh Amendment immunity, he cannot show that he was paid less than similarly situated faculty members on account of his age.  "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, ___, 129 S.Ct. 2343, 2352 (2009). Under the alternative burden-shifting method of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff may establish a prima facie case of age discrimination under the ADEA by showing that:  (1) he is a member of the protected class; (2) his employer took an adverse employment action against him; (3) he was performing his job to the legitimate expectations of his employer; and (4) he was either replaced by someone outside the protected class or similarly-situated employees outside of his protected class were treated more favorably.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).  If the Plaintiff can establish a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the Plaintiff.  Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)(this is a burden of production, not persuasion).  If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Even assuming that Greer has established a prima facie case of age discrimination concerning his pay, the University has articulated legitimate, non-discriminatory reasons for any difference in pay which Greer fails to show are false or pretext for discrimination (as discussed further below in

connection with Greer's Title VII pay claim below).  Further, his ADEA pay claims fail because he has not shown that he would not have been paid less "but for" his age.

         (2)      <u>Pay Claims under Title VII and the EPA</u>

         Greer claims that the University discriminated against him based on his gender by paying him less than similarly-situated professors in the English department.  The University argues that Greer cannot establish his prima facie case of discrimination because he is not similarly situated to any of his colleagues (such that he cannot show he is being paid less on account of his gender) and it has articulated legitimate, non-discriminatory reasons which Greer has not shown are pretextual.

         Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) to establish a prima facie case of discrimination.  To establish a prima facie case of pay disparate treatment/wage discrimination under Title VII a plaintiff must show that: (1) he is a member of a protected class; (2) he was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job.  <u>Brinkley-Obu v. Hughes Training, Inc.</u>, 36 F.3d 336, 343 (4th Cir.1994); <u>Kess v. Municipal Emps. Credit Union of Baltimore, Inc.</u>, 319 F.Supp.2d 637, 644 (D.Md.2004).  <u>McDonnell Douglas</u> provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate,

non-discriminatory basis for the challenged employment action.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the employer provides the required evidence of a nondiscriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  <u>Id.</u> at 804; <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000).[4]

        (a)    <u>Prima Facie Case</u>

Greer appears to allege that he has established a prima facie case of pay disparity because female professors who had less experience than him were paid more than he was paid.  Greer, however, fails to establish a prima facie claim because he cannot show he is paid less than similarly-situated faculty members on account of his gender.  If, as asserted by the University, the proper potential comparators are those within Greer's discipline (creative writing faculty members in the English Department), who are associate professors, and who possess a nine-month MA degree,[5] there are no recent members of the English Department that fit such a description such that there are no similarly-situated persons.  Alternatively, if Greer is compared to all creative writing faculty members (including full professors), he fails to establish a prima facie case because three out of the five faculty members who earned more than Greer are male.  <u>See</u> Rivers Aff., Para. 9; P. Dep. 93-94 (in which Greer identifies creative writing faculty members).  Greer appears to argue that he should be compared to all associate professors in the English Department.  This comparison fails to show

---

     [4]Greer's EPA claim is discussed further below.  Title VII and the EPA can be construed harmoniously, though there are some differences between the statutes.  <u>Reece v. Martin Marietta Techs., Inc.</u>, 914 F. Supp. 1236, 1240 (D.Md.1995).

     [5]He admitted that an MFA, which is a two-or three-year graduate degree, is considered the terminal degree in creative writing.  P. Dep. 52-53.  He, however, only has an MA, which is a nine-month program.  <u>Id.</u> at 52.

that employees outside his class (male) were being paid less than female employees. In the 2010-2011 academic year (both parties use these figures in order to analyze whether Greer was paid less than similarly-situated associate professors), there were twenty-eight associate professors (of which fourteen are male and fourteen are female). Greer was paid less than all associate professors, except for one female associate professor. Thirteen of the associate professors who were paid higher than Greer (including three of the four highest-paid associate professors) are male, and thirteen are female. Thus, Greer fails to show that females were paid more than similarly-situated males (associate professors in the English Department).

(b)     Legitimate, Nondiscriminatory Reasons/Pretext

Even if Greer can establish his prima facie case wage discrimination based on his gender (or his age), the University has articulated legitimate, non-discriminatory reasons for the pay difference. The reasons given are that: (1) Greer failed to be promoted to the position of full professor and did not reapply for promotion, such that he did not receive the raise he would have received if he had been promoted (and subsequent raises which are percentage increases); (2) his publishing was largely unproductive in recent decades (that he has not published a single novel or other book with a major publisher since 1989) which has been reflected in his annual reviews (since the 1990s, Greer had the lowest average annual evaluation rating of any English Department member); and (3) market forces and salary compression.

Greer fails to show that the University's articulated reasons for Greer's salary level were false or were not the real reasons for the actions. He has presented nothing to dispute that he failed to be promoted to full professor and has not reapplied for promotion.

13

As to his level of productivity, Greer appears to argue that he is more productive because he has published more than any of his peers.  This assertion is not supported by any evidence in the record, as discussed in the facts above indicating that his productivity declined.   Although Greer appears to argue that his productivity should be based on his whole body of work (including novels published prior to his employment with the University), the University appears to have concentrated on what faculty members have accomplished more recently in determining salary increases.  Although Greer may not feel that this is fair or he may believe he should be paid more because of his years of service,[6] it is not the province of the courts "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason." Dugan v. Albemarle County School Bd., 293 F.3d 716, 722 (4th Cir.2002) (internal quotation omitted); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005)(Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants.").   Greer argues that professional criticisms of his teaching, service, and history of publishing are fabricated to hide a discriminatory agenda.  In support of this, he points to what he perceives as a bias against him based on statements by faculty members over the years.  He, however, points to nothing to show that this bias was based on a prohibited factor (such as sex or age). Greer's own opinions about his qualifications and his employer's subjective motivations are not sufficient to establish pretext. See McCain v. Waste Mgmt., Inc., 115 F.Supp.2d 568, 574 (4th Cir. 2000). Further, Greer has presented nothing to dispute his low annual evaluation ratings.  "Job performance and

_____

[6]As was noted in Rosen v. Columbia University, No. 92 Civ. 6330 (AGS),1995 WL 464991 S.D.N.Y. Aug. 7, 1995), "[t]he diminishing returns to a faculty member, in terms of salary, of length of tenure at a university is a well-known and commented upon phenomenon." Id. at *8 (citing Tagatz v. Marquette Univ., 861 F.2d 1040, 1045 (7th Cir. 1988)).

14

relative employee qualifications are widely recognized as valid, non-discriminatory basis for any adverse employment decision." Evans v. Technologies Applications & Servs. Co., 80 F.3d at 960.

Although Greer argues that market forces and salary compression "cannot justify the injustice" he suffered, he fails to point to any prohibited motivator. The University provides that in order to enhance the Department of English's reputation, it has to attract promising scholars from other institutions, which requires a higher salary to convince them to move to a new institution. The salary of a new faculty member thus may be higher or close to that of a faculty member who has been at the University for many years, resulting in salary compression. See Fitzpatrick Dep. 14-15; Rivers Aff. 12. Courts have, in certain circumstances, found that market forces and salary compression are legitimate, non-discriminatory factors (Title VII) or factors other than sex. See, e.g., Cullen v. Indiana Univ. Bd. of Trs., 338 F.3d 693, 703 (7th Cir. 2003)(market forces, educational credentials and other factors may be legitimate reasons to justify pay disparity); Schultz v. Department of Workforce Development, 752 F.Supp.2d 1015 (W.D.Wis. 2010)("An employer may take market forces into account when determining the salary of an employee, provided there is no evidence suggesting that the employer took advantage of any kind of market forces that would permit different pay for a male and female for the same position."); Ratts v. Business Sys. Inc., 686 F.Supp. 546, 552 (D.S.C. 1987)("There is no violation of the [EPA] if management is forced to pay more money to be able to hire someone with special skills or fill a particular need.").

     (3)    Pay Claims under the EPA

Greer alleges that the University paid similarly-situated female employees more than he was paid. The University contends that Greer fails to establish a claim under the EPA.

To establish a prima facie case under the EPA, a plaintiff must prove: "(1) that [his] employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 613 (4th Cir.1999) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 189 (1974)); see Reece v. Martin Marietta Techs., Inc., 914 F.Supp. at 1240 (D.Md. 1995).

If the plaintiff establishes a prima facie case under the EPA, the burden shifts to the defendant to prove that the pay differential is justified by the existence of one of the four statutory exceptions set forth in § 206(d)(1): (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. Strag v. Board of Trustees, 55 F.3d 943, 948 (4th Cir. 1995); Reece v. Martin Marietta Techs., Inc., 914 F.Supp. 1236, 1241 (D.Md. 1995). If the employer is unable to meet the burden of proving a defense, then the employer is liable for sexual discrimination in pay. Reece, 914 F.Supp. at 1241(citing Strag, 55 F.3d at 948). Once this burden is met by the employer, "the plaintiff's claim must fail unless the plaintiff can satisfactorily rebut the defendant's evidence." Strag, 55 F.3d at 948.

Comparing Greer's salary to those of the other associate professors in the English Department, there are an equal number of male and female employees who are earning more than him and the one associate professor who earns less is female. Greer fails to establish a prima facie case under the EPA because he fails to show that his employer has paid different wages to employees of opposite sexes. See, e.g., Shamey v. Administrator, GSA, 732 F.Supp. 122, 135 (D.D.C. 1990)(holding the plaintiff failed to establish a prima facie violation of the EPA, in part, because she "included women, members of the protected class, in the list of co-workers she claims are discriminatorily paid more than she is

paid."); <u>Betts v. Iowa Dep't of Natural Resources</u>, 2002 WL 340799, *8 (S.D. Iowa Feb. 25, 2002

("[The male plaintiff] offers no rationale for the Court to focus only on the single female employee

he identified and disregard the three male [employees] whose starting salaries were the same as his.").

The University, as discussed above, has provided reasons (Greer's failure to be promoted,

Greer's lack of publishing productivity in recent decades and low evaluation scores, and market

forces and salary compression) for the salary differential that are not based on sex.  Greer fails to

rebut the University's evidence.

     B.    <u>Harassment/Hostile Work Environment</u>

In his complaint, Greer alleges he was subjected to harassment. In his deposition,

Greer claims he was harassed by Fitzpatrick, Newman, and Rivers.  P. Dep. 76-77, 161, 165.[7]

The University argues that they are entitled to summary judgment as to these claims because (1)

Greer has not administratively exhausted any hostile environment claim; (2) there is no evidence that

any alleged harassment was on account of Greer's age or gender; and (3) any alleged harassment was

not sufficiently severe or pervasive to alter the conditions of Greer's employment.

Plaintiff did not administratively exhaust a hostile environment claim based on his age or

gender and thus such claims are barred.  "Only those discrimination claims stated in the initial charge,

---

[7]He claims that on one occasion, Dr. Rivers was talking with another person when he turned around, pointed at Greer, and shouted, "I need to talk to this man about something."  P. Dep. 140. He alleges that on three occasions from 2007 to 2010, Dr. Rivers called Greer into his office for ten-minute conversations about Greer giving too many "A" grades to his students (Greer admits he gives "A" grades to approximately 85% of his students - P. Dep. 121); another professor's complaint that Greer was missing student conferences, which was putting pressure on other faculty; and (3) concerns about Greer reading his own poetry in class.  P. Dep. 142-143, 166-168.

Greer alleges that on one occasion in 2006, Dean Fitzpatrick humiliated him in rejecting his pay request.  P. Dep. 82, 160; D. Ex. 42.  He also claims that prior to 2011, Dr. Newman harassed him by opposing his promotion application and removing him as the Director of the MFA.

17

those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent ... lawsuit." Evans v. Technologies Applications & Serv. Co., 80 F.3d at 963 (discussing Title VII); see also Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (If "the claims raised ... exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."). There is no indication that Greer included a hostile environment claim or claim of harassment based on age and/or gender in his Charge and has provided nothing to show that such claims are related to the claims in his Charge or that these claims were developed in the investigation of the Charge.

Even if these claims are properly exhausted (and if the ADEA claim is not barred by Eleventh Amendment immunity), Greer fails to establish a hostile work environment claim. To prevail on a Title VII or ADEA hostile work environment claim based on sex or age, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [sex or age] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrs., 66 F.3d 705, 710 (4th Cir.1995) (en banc)(hostile work environment claims based on sex); Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006)(citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003))(hostile work environment claims based on age).

Greer has offered no evidence that the alleged conduct was based on his sex or age. Personal animus is insufficient to support discrimination claims. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 282 (4th Cir. 2000)(citing Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir.

1997))("[P]ersonality conflicts and questioning of job performance are unavoidable aspects of employment.").

Additionally, Greer has not shown that the alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment. In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22(1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Here, the alleged conduct does not rise to this level.

     C.    Failure to Promote -ADEA and Title VII

Greer alleges that he has been denied promotions because of his age and gender. Complaint, Paras. 7, 9. In his deposition, Greer clarified that he is challenging his 2001 denial of promotion (to full professor). P. Dep. 161. The University argues that this claims should be rejected because it has not been administratively exhausted, is time-barred, and is substantively meritless.

Greer has not exhausted his administrative remedies by bringing a charge with the EEOC contesting the denial of his promotion. Even if he has done so, the claim is untimely because Greer did not file a charge within 300 days after the alleged unlawful employment practice occurred in 2001. See 42 U.S.C. § 2000e-5(e)(1)(To pursue a claim, a plaintiff must have filed his complaint

with the EEOC within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).

     D.    Retaliation

          In his deposition, Greer claims he was retaliated against for filing this action by not being promoted to the MFA position in 2010.  P. Dep. 203.  The University argues that it is entitled to summary judgment because Greer did not exhaust his administrative remedies as to a claim related to the denial of the MFA directorship position, there is no evidence of any discriminatory or retaliatory animus as Greer admitted he does not know why Blackwell was selected and he was not, Greer concedes he has no evidence that the filing of this action caused his non-appointment, and the decision to appoint Blackwell predated Greer's filing of this action which vitiates any retaliation claim.  In its opposition memorandum, Greer claims he was retaliated against for filing his Charge with SCHAC, such that his protected activity was prior to the alleged retaliatory action.  In its reply, the University argues that Greer never asserted a claim that he was retaliated against for filing a charge, Greer has presented no evidence of retaliatory animus or causation, and it has offered a non-retaliatory reason for its action which Greer fails to rebut.

       Greer fails to show that his current retaliation claim (that he was not selected for the MFA Directorship position in retaliation for his filing a Charge with SCHAC),is properly before the Court. This claim was not asserted in the complaint, Greer did not amend his complaint, and he did not assert such a claim in his deposition.  "[A] plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment."  Williams v. Jackson, 2009 WL 363450, *7 (D.S.C. Feb. 10, 2009)(citing, inter alia, Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004); see Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002); Church v. Maryland, 180 F.Supp.2d

708, 732 (D.Md. 2002).  Further, Greer cannot change his deposition testimony (that his retaliation claim is based on the filing of his lawsuit), by asserting different facts in his opposition memorandum. See Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984)("'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.  A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.")(citations omitted).

Even if Greer's claim is properly before the Court, he fails to establish a prima facie case of retaliation.  To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)    the employee engaged in protected activity;[8]

2)    the employer took some adverse employment action against the employee; and

3)    a causal connection existed between the protected activity and the adverse action.

See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant meets this

---

[8]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity.  Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988); Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. <u>Reeves</u>, 530 U.S. at 147 (2000).

Greer fails to show a causal connection. During his deposition, he stated that he thought the University failed to appoint him to the MFA position in retaliation for filing this action. P. Dep. 203. This action, however, was filed after the selection of Blackwell (March 2010). Further, Greer fails to show a causal connection based on temporal proximity alone because Blackwell was appointed the Director of the MFA program in March 2010 (<u>see</u> Rivers Aff., Para. 13),[9] approximately six months after Greer filed his charge in early September 2009 (P. Dep., D. Ex. 13). <u>See</u>, <u>e.g.</u>, <u>Pascual v. Lowe's Home Ctrs., Inc.</u>, No. 05-1847, 2006 WL 2226571 (4th Cir. Aug. 2, 2006)(holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); <u>Shields v. Federal Express Corp.</u>, No. 03-2103, 2005 WL 102990 (4th Cir. Jan. 19, 2005)(three to four months was insufficient to raise an inference); <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 278 (4th Cir. 2001)("A six month lag is sufficient to negate any inference of causation."); <u>Garrett v. Lujan</u>, 799 F. Supp. 198, 202 (D.D.C.1992)(concluding that the passage of nearly a year precluded an inference of causal connection); <u>Parrott v. Cheney</u>, 748 F. Supp. 312 (D.Md.1989)(even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), <u>aff'd</u> <u>per curiam</u>, 914 F.2d 248 (4th Cir. 1990).

---

[9]In his opposition memorandum, citing page 201 of his deposition, Greer asserts that Blackwell was appointed in January 2010. Review of that testimony, however, only reveals that Greer testified that Blackwell was appointed at some time after he sent his note to Rivers on January 15, 2010. <u>See</u> P. Dep. 201. Greer further testified that he did not know when the decision to appoint Blackwell was made, that he thought it was "at the end of the spring semester, possibly early summer." P. Dep. 204.

Even if Greer can establish a prima facie case of retaliation, the University has articulated a legitimate, non-discriminatory reason for its actions, that Blackwell has been more productive than Greer in the last decade.  Greer has not shown that this reason is false or is pretext for discrimination.

### CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion to dismiss and for summary judgment (Doc. 25) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

January 20, 2012
Columbia, South Carolina

23